RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

FLORIDA POWER CORP., dba Progress Energy Florida, Inc.,

        *Plaintiff-Appellant,*

    *v.*

FIRSTENERGY CORP.,

        *Defendant-Appellee.*

No. 14-4126

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:12-cv-01839—Dan A. Polster, District Judge.

Argued: August 4, 2015

Decided and Filed: November 5, 2015

Before: SUHRHEINRICH and GRIFFIN, Circuit Judges; and STAFFORD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** John B. Nalbandian, TAFT, STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellant. Paul D. Clement, BANCROFT PLLC, Washington, D.C., for Appellee. **ON BRIEF:** John B. Nalbandian, Kim K. Burke, Matthew D. Lawless, TAFT, STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellant. Paul D. Clement, George W. Hicks, Taylor Meehan, BANCROFT PLLC, Washington, D.C., Ronald S. Kopp, Jessica A. Lopez, ROETZEL & ANDRESS, LPA, Akron, Ohio, for Appellee.

      GRIFFIN, J., delivered the opinion of the court in which STAFFORD, D.J., joined. SUHRHEINRICH, J. (pp. 19–31), delivered a separate dissenting opinion.

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

1

———————

**OPINION**

———————

GRIFFIN, Circuit Judge.　Almost seventy years ago, plaintiff's predecessor in interest owned and operated two coal gasification plants in Florida.　In 1998 and 2003, plaintiff entered into Administrative Orders by Consent ("AOCs") with the U.S. Environmental Protection Agency to assess the feasibility of remediation of environmental contamination at those sites.　At issue in this case is the narrow legal question of whether those AOCs constitute "administrative settlements" for purposes of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C § 9601 *et seq.*　We hold that they do not.　We therefore reverse the district court's dismissal of plaintiff's contribution action based on the statute of limitations and remand for further proceedings.

I.

This case involves two Florida plants, one in Sanford and the other in Orlando. After discovering hazardous contaminants on those sites in the 1990s, the EPA concluded that plaintiff Florida Power Corporation, along with other previous owners of those sites, was liable for costs associated with removal and remediation of contamination.　In 1998, plaintiff entered into an "Administrative Order by Consent for Remedial Investigation/Feasibility Study" with the EPA for the Sanford site ("Sanford AOC").　In 2003, it entered into a similar agreement of the same title for the Orlando site ("Orlando AOC").

Under the terms of the AOCs, plaintiff agreed to conduct and implement a remedial investigation and feasibility study for each site.　The remedial investigation was intended to determine the nature and extent of the public safety threat.　The feasibility study was designed to identify and evaluate options for remedial action.　The AOCs established a plan for implementation and set monetary penalties for violating the plan.　Plaintiff also agreed to pay the EPA $429,731.23 for past response costs it had incurred at the Sanford site and $104,751.46 for such costs at the Orlando site.　Following completion of the investigation and study at the Sanford site, the EPA entered three Records of Decision—in 2000, 2001, and 2006.　On

January 16, 2009, the U.S. District Court for the Middle District of Florida approved a consent decree between plaintiff and the EPA for actual performance of remediation at the Sanford site. Regarding the Orlando site, plaintiff submitted a draft Remedial Investigation Report, Risk Assessment, and Remedial Alternative Technical Memorandum that was under review by the EPA at the time of this litigation.

On December 30, 2011, plaintiff filed this cost recovery and contribution CERCLA action in the Middle District of Florida for costs related to both sites. It also sought a declaratory judgment that defendant, as a successor in interest to a former owner-operator of the sites, was liable for future response costs that plaintiff would incur. Upon defendant's motion, the case was transferred to the Northern District of Ohio. Defendant moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the basis that the 1998 and 2003 AOCs had triggered CERCLA's three-year statute of limitations and plaintiff's claims were therefore barred. Initially, the district court denied the motion on the grounds that the Sanford AOC was not a settlement agreement because it did not release any party from any liability and preserved the EPA's right to sue plaintiff for CERCLA violations. Regarding the Orlando AOC, the court ruled that plaintiff could only bring a cost recovery action because the AOC "by its own terms, was not a settlement agreement."

However, on reconsideration, following our decision in *Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757 (6th Cir. 2014), the district court reversed itself and dismissed plaintiff's claims because it concluded the AOCs at issue resembled the settlement agreement in *Hobart* and therefore triggered the statute of limitations. We disagree and, for the reasons stated herein, reverse and remand for further proceedings.

II.

A.

"The district court's decision regarding a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed using the same de novo standard of review employed for a motion to dismiss under Rule 12(b)(6)." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). We take as true all well-pleaded material allegations in the

opposing party's pleadings, and affirm the district court's grant of the motion only if the moving party is entitled to judgment as a matter of law.  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

Broadly speaking, CERCLA "facilitates cleanup and remediation of contaminated lands, and shifts the financial burden of such environmental response actions to the parties responsible for releasing hazardous substances."  *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 456 (6th Cir. 2007); *see Walls v. Waste Res. Corp.*, 823 F.2d 977, 981 (6th Cir. 1987).  The statute imposes liability on several categories of potentially responsible parties ("PRPs"), including current owners or operators of a contaminated facility, owners or operators of a facility at the time hazardous substances were disposed, any person who arranged for disposal of such hazardous substances at a facility, and any person who accepted such hazardous substances for transport to disposal or treatment facilities.  42 U.S.C. § 9607(a)(1)−(4).  When the EPA identifies a contaminated site, it has several options.  It may clean up the site itself under CERCLA § 104, 42 U.S.C. § 9604, compel a PRP to clean up the site under § 106, *id.* § 9606, or enter into an agreement under § 122 by which a PRP agrees to clean up the site, *id.* § 9622.  *Hobart*, 758 F.3d at 762.

CERCLA provides two express cost-shifting actions for costs incurred in remediating a site.  Under the "cost recovery" provision of CERCLA § 107(a)(4), the EPA may bring an action against PRPs to recover "all costs of removal or remedial action incurred by the United States Government."  42 U.S.C. § 9607(a)(4)(A).  A PRP that cleans up a site may likewise bring a cost recovery action against other PRPs.  *See id.* § 9607(a)(4)(B); *ITT Indus.*, 506 F.3d at 456.  This cause of action "grants one PRP the same rights as an innocent party to sue another PRP for cleanup costs incurred in a removal or remedial action."  *Bernstein v. Bankert*, 733 F.3d 190, 201 (7th Cir. 2012) (citing *United States v. Atl. Research Corp.*, 551 U.S. 128 (2007)).  The second cost-shifting option is a "contribution" action under CERCLA § 113(f)(1).  42 U.S.C. § 9613(f)(1).  "Contribution is defined as the 'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'"  *Atl. Research Corp.*, 551 U.S. at 138 (quoting Black's Law Dictionary 353 (8th ed. 2004)).

To proceed with a contribution action, a plaintiff must satisfy one of two statutory conditions. *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 162−63 (2004); *see Hobart*, 758 F.3d at 767. First, a plaintiff may sue for contribution after the government has compelled it to clean a site or after the government (or a private party) has brought a cost recovery action against the plaintiff. 42 U.S.C. § 9613(f)(1); *Cooper Indus.*, 543 U.S. at 166−67; *Hobart*, 758 F.3d at 762. Second, at issue here, a plaintiff may sue for contribution after the government has responded to a hazardous site itself and then entered a settlement agreement with a plaintiff to compensate the government for its response costs. *Cooper Indus.*, 543 U.S. at 167; *Hobart*, 758 F.3d at 768. In that case, a plaintiff may proceed against other PRPs who were not parties to the settlement if the plaintiff "has resolved its liability to the United States . . . for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f)(3)(B).

Recovery and contribution actions apply to "persons in different procedural circumstances," *Atl. Research Corp.*, 551 U.S. at 139, and "provide mutually exclusive remedies," *Hobart*, 758 F.3d at 768. Unlike a cost recovery action—in which a party seeking reimbursement of response costs need not be liable to a third party, such as the EPA—a party seeking contribution must already be liable to a third party. *See id.* Recovery actions allow a plaintiff to recoup only "necessary costs of response incurred by that party." 42 U.S.C. § 9607(a)(4)(B). However, a plaintiff does not "incur" its own response costs when it pays to satisfy a settlement agreement or court judgment; rather, it reimburses other parties for the costs they incur. *Atl. Research Corp.*, 551 U.S. at 139. Thus, a plaintiff that has entered settlement may only bring a contribution action against other PRPs, not a cost recovery action. *Hobart*, 758 F.3d at 767.

The effective date of a settlement agreement under CERCLA § 113(f)(3)(B) triggers the running of a three-year statute of limitations for a contribution action. *Hobart*, 758 F.3d at 775. However, to trigger the statute of limitations, an agreement must constitute an "administrative or judicially approved settlement" within the meaning of § 113(f)(3)(B). *See* 42 U.S.C. § 9613(f)(3)(B). The "defining feature of an 'administrative settlement' is that the agreement 'resolve[s] [the PRP's] liability to the United States . . . for some or all of a response action or for

some or all of the costs of such action.'"  *Hobart*, 758 F.3d at 768 (quoting 42 U.S.C. § 9613(f)(3)(B)).

To determine whether the agreement resolves a PRP's liability, we look to the specific terms of the agreement.  *Id.* at 770.  "Whether or not liability is resolved through a settlement simply is not the sort of question which can or should be decided by a universal rule.  Instead, it requires a look at the terms of the settlement on a case-by-case basis."  *Bernstein*, 733 F.3d at 213.  In interpreting the agreement, we apply state contract law.  *Hobart*, 758 F.3d at 768.  Under Florida law, "the actual language of the [contract] is the best evidence of the parties' intent, and its plain meaning controls."  *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 143 So. 3d 881, 890 (Fla. 2014); *see also Richland Towers, Inc. v. Denton*, 139 So. 3d 318, 321 (Fla. Dist. Ct. App. 2014) (observing that courts must "construe the agreement according to its plain language and consider the provisions at issue in the context of the entire agreement in order to achieve a reasonable construction to accomplish the intent and purpose of the parties").

B.

Plaintiff maintains that the district court erred in concluding that the statute of limitations barred its contribution action because the Sanford and Orlando AOCs do not resolve plaintiff's liability to the EPA.  Plaintiff argues that the AOCs closely resemble the agreement in *ITT Industries, Inc. v. BorgWarner, Inc.*, 506 F.3d 452, and in the Seventh Circuit case *Bernstein v. Bankert*, 733 F.3d 190—consent orders that did not resolve liability to the EPA and were therefore not administrative settlements under § 113(f)(3)(B).

In *ITT*, the plaintiff voluntarily entered into a 2002 "Administrative Order by Consent" with the EPA to perform a remedial investigation and feasibility study on a contaminated site in Michigan.  506 F.3d at 455.  Shortly before the anticipated three-year statute of limitations expired, the plaintiff filed a lawsuit for cost recovery and contribution.  *Id.*  The plaintiff argued that the AOC *was* an "administrative settlement" for purposes of a contribution action under § 113(f)(3)(B).  Like the district court, we disagreed, holding that the AOC did not resolve any of the plaintiff's liability for at least two reasons.  First, the EPA broadly reserved its rights to take legal action to adjudicate the plaintiff's liability for failure to comply with the AOC, for costs of response (past, present, or future), for costs of injunctive relief or enforcement, criminal liability,

and other damages.  *Id.* at 459.  Second, the plaintiff had not conceded the question of its liability, and the AOC expressly stated that the plaintiff's "participation in this Consent Order does not constitute an admission of liability."  *Id.* at 460.

The Seventh Circuit case, *Bernstein*, is especially illuminating because it involved two distinct AOCs at different stages of performance.  There, the plaintiffs entered into an "Administrative Order by Consent" in 1999 to study removal alternatives at a contaminated site in Indiana and established a trust to reimburse the EPA for past response and oversight costs, as well as future oversight costs.  733 F.3d at 196−97; *see also Bernstein v. Bankert*, 702 F.3d 964, 970 (7th Cir. 2012), *opinion amended and superseded on rehearing*, 733 F.3d 190. The plaintiffs fully performed their obligations, and the EPA approved their actions in 2000. 702 F.3d at 970.  In 2002, the plaintiffs entered into a second, substantially similar "Administrative Order by Consent" with the EPA to perform hazardous material removal at the site.  *Id.* at 970−71.  The plaintiffs filed a lawsuit in 2008 for cost recovery and declaratory judgment, as well as state-law claims.  *Id.* at 971.  The district court construed the cost recovery action as a contribution action and dismissed it as barred by the statute of limitations.  *Id.* at 971−72.

On appeal, the plaintiffs argued that their claims were correctly pleaded as cost recovery actions. The Seventh Circuit agreed with respect to the 2002 AOC, but not the 1999 AOC:  first, it held that the plaintiffs had a time-barred contribution action based on the 1999 AOC because the AOC resolved at least some of the plaintiffs' liability upon complete performance in 2000 (the date of the EPA's approval), thereby triggering the statute of limitations.  *Id.* at 978−81. Second, regarding the 2002 AOC, the court held that the statute of limitations had not yet begun to run.  Specifically, the court observed that "there can be no meaningful argument" that the 2002 AOC resolved the plaintiffs' liability because performance was ongoing at the time of litigation and the EPA expressly conditioned its covenants not to sue or take administrative action "upon the complete and satisfactory performance by [plaintiffs] of their obligations under [the AOC]."  *Id.* at 977, 983.

At the defendants' request, the *Bernstein* court granted panel rehearing to clarify issues raised by the EPA as amicus curiae with respect to whether parties may structure an

administrative settlement with the EPA to immediately resolve liability.  733 F.3d at 196.  In its resulting opinion, the Seventh Circuit explained that a responsible party "may obtain an immediately effective release from the EPA in a settlement, or it may obtain only a performance-dependent conditional covenant not to sue with an accompanying disclaimer of any liability." *Id.* "Whether, and when, a given settlement 'resolves' a party's liability to the EPA within the meaning of 42 U.S.C. § 9613(f)(3)(B) is ultimately a case-specific question dependent on the terms of the settlement before the court." *Id.*  The court emphasized that the defendants and the EPA erred in equating the signing of an AOC with the resolution of liability.  *Id.* at 210. Applying traditional rules of statutory interpretation, it explained that "liability [is] 'resolved' when the issue of liability is *decided,* in whole or in part, in a manner that carries with it at least some degree of certainty and finality." *Id.* at 212 (emphasis in original).  In short, "[t]o meet the statutory trigger for a contribution action under § 9613(f)(3)(B), the nature, extent, or amount of a PRP's liability must be decided, determined, or settled, at least in part, by way of agreement with the EPA." *Id.*  (emphasis omitted).

Applying these principles, the Seventh Circuit again held that the 2002 AOC did not resolve the plaintiffs' liability for two reasons.  First, the court observed that the plaintiffs refused to consider the AOC to be an admission of liability, citing a provision of the AOC stating that it "shall not constitute any admission of liability by any (or all) of [the plaintiffs]." *Id.* at 203−04, 212. Second, "the EPA only *conditionally* promised to release [the plaintiffs] from liability" upon complete performance of the AOC and certification of such promise. *Id.* at 212 (emphasis in original).  The court reasoned that this conditionality meant that if resolution of liability was intended, it "would not occur until performance was complete, which is the first time at which the covenant would have any effect." *Id.*  In support of its reading, the court observed that the EPA "expressly reserved its right to seek legal or equitable relief to enforce the terms of the Order at any time before those covenants went into effect." *Id.* at 212−13 (internal quotation marks and alterations omitted).  In making this observation, the court clarified that, "if the EPA had included an immediately effective promise not to sue as consideration for entering into the agreement, the situation would be different." *Id.* at 213.  But, in *Bernstein,* that was not the case.  In summary, the Seventh Circuit observed:  "The parties to a settlement may choose to structure their contract so that liability is resolved immediately upon execution of the contract.

Or, the parties may choose to leave the question of liability open through the inclusion of reservations of rights, conditional covenants, and express disclaimers of liability.  In this case, the parties clearly chose to do the latter—a choice which the EPA typically has great weight to influence." *Id.* at 213−14 (internal citations omitted).

C.

Like the agreements in *ITT* and *Bernstein*, the Sanford and Orlando AOCs do not resolve plaintiff's liability because resolution of liability is conditioned on plaintiff's performance and does not take immediate effect.  In both the Sanford and Orlando AOCs, the EPA broadly reserved its "right to take any enforcement action pursuant to CERCLA or any other available legal authority . . . for any violation of law or this Consent Order."  This language resembles that of the *ITT* AOC, which reserved the EPA's "right to take any other legal or equitable action as it deems appropriate and necessary." *ITT* AOC, at 20.  It also reflects the AOC in *Bernstein*, in which the EPA conditionally "covenant[ed] not to sue [the plaintiffs] for judicial imposition of damages or civil penalties or to take administrative action against [the plaintiffs] for any failure to perform actions agreed to in this Order," and further, "in consideration and upon [the plaintiffs'] payment of the EPA's response costs, . . . covenant[ed] not to sue or take administrative action against [the plaintiffs] under Section 107(a) of CERCLA."  733 F.3d at 203.  In *Bernstein*, those covenants were expressly "conditioned upon the complete and satisfactory performance" of the AOC by plaintiffs. *Id.*

Moreover, to the extent the Sanford and Orlando AOCs expressly address the resolution of plaintiff's liability, they provide:

> Following satisfaction of the requirements of this Consent Order, [plaintiff] shall have resolved [its] liability to EPA for the performance of the [remedial investigation/feasibility study] that is the subject of this Order.  [Plaintiff is] not released from liability, if any, for any actions taken beyond the terms of this Order regarding removals, other operable units, remedial design/remedial action (RD/RA), or activities arising pursuant to section 121(c) of CERCLA.

This language goes a step beyond the conditional covenants not to sue and reservation of rights in *ITT* and *Bernstein* to explicitly condition the resolution of liability on performance.

The dissenting opinion suggests that because the parties included *any* reference to the resolution of liability, we should infer that they intended to resolve plaintiff's liability. That interpretation, however, ignores the context in which the reference is made. The AOCs do not provide that plaintiff has "resolved its liability to the EPA as of the effective date of this agreement," but rather state, "[f]ollowing satisfaction of the requirements of this Consent Order, [plaintiff] shall have resolved [its] liability to the EPA . . . ." The phrase is better interpreted as conditioning the resolution of plaintiff's liability on plaintiff's performance. To conflate these phrases would compromise the meaning of the parties' chosen language.

As to the admission of liability by plaintiff, the Sanford AOC is silent. The Orlando AOC, however, provides that "participation of [plaintiff] in this Order shall not be considered an admission of liability." This provision parallels the non-admission of liability provisions in the *ITT* and *Bernstein* AOCs. *See ITT*, 506 F.3d at 460 ("participation in this Consent Order does not constitute an admission of liability"); *Bernstein*, 733 F.3d at 204 (the plaintiffs' agreement "shall not constitute any admission of liability"). In short, there are no material differences between the AOCs in *ITT* and *Bernstein* that warrant a different outcome in this case. We therefore hold that the Sanford and Orlando AOCs do not resolve plaintiff's liability for purposes of CERCLA § 113(f)(3)(B).

Our recent case of *Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757, reinforces this conclusion. In that case, we considered whether a 2006 Administrative Settlement and Order on Consent ("ASAOC") with the EPA constituted an "administrative settlement" for purposes of CERCLA § 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B). *Hobart*, 758 F.3d at 763. We held that the ASAOC was an administrative settlement, thereby affirming the district court's dismissal of the plaintiffs' contribution action as time-barred. *Id.* at 768−71. We based our reasoning on three provisions: first, the ASAOC provided that the parties agreed that the agreement "constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA . . . pursuant to which the [plaintiffs] have, as of the Effective Date, resolved their liability to the United States for the Work, and Future Response Costs." *Id.* at 768−69; *Hobart* ASAOC ¶ 96b. We explained that this provision expressed the parties' intent to resolve some of the plaintiffs' liability because the parties expressly designated the agreement as an

"administrative settlement," cited the relevant statutory provision, and made immediately effective resolution of plaintiffs' liability. *Id.* at 769. Second, we cited the title of the agreement: "Administrative Settlement Agreement and Order on Consent." *Id.* We observed that the title "precisely matched the statutory language in § 113(f)(3)(B) ('administrative or judicially approved settlement.')." *Id.* Third, we considered the EPA's broad covenant not to sue or take administrative action, taken "[i]n consideration of the actions that will be performed and the payments that will be made by [the plaintiffs] under the terms of this Settlement Agreement." *Id.*; *Hobart* ASAOC ¶ 82. Reading that provision in concert with the above paragraphs, we concluded that the parties intended for the ASAOC to resolve the plaintiffs' liability to the government as of the effective date of the ASAOC. *Hobart*, 758 F.3d at 769.

In *Hobart*, we went on to identify four "material differences" between the ASAOC in *Hobart* and AOC in the *ITT* case. *Id.* at 770. First, the title of the agreement in *Hobart* included the phrase "administrative settlement," while the *ITT* agreement did not, which we considered probative of intent. *Id.* Second, and more substantively, the ASAOC explicitly stated that the plaintiffs' liability was resolved while the *ITT* AOC's analogous paragraph contained "no explicit statement that ITT Industries had resolved its liability." *Id.* Third, regarding that same paragraph, the ASAOC contained a reference to the relevant contribution statute, § 113(f)(3)(B), while the analogous paragraph in the *ITT* AOC did not. *Id.* Fourth and finally, the government's covenant not to sue was much broader in the ASAOC than the *ITT* AOC and took effect immediately, and, at the same time, the government's reservation of rights and ability to withdraw from the ASAOC was narrower than the *ITT* AOC. *Id.* With respect to the Seventh Circuit's *Bernstein* case, we observed that it was distinguishable from *Hobart* because resolution of liability was contingent on performance and was therefore not "definitively settled" upon signing of the AOC in *Bernstein*. *Id.* at 771.

Our analysis in *Hobart* supports our conclusion that the Sanford and Orlando AOCs do not resolve plaintiff's liability and are therefore not administrative settlements. Most compelling is that the "material differences" between the *Hobart* ASAOC and the *ITT* AOC likewise separate the Sanford and Orlando AOCs from the *Hobart* ASAOC. With respect to the title of the agreements, neither the Sanford nor Orlando AOC is titled "administrative

settlement"—a phrase that is not found anywhere in either AOC. Regarding the resolution of liability, the instant AOCs expressly condition the resolution of liability on performance of the contract, as opposed to resolving liability on the contract's effective date. Specifically, the AOCs provide: "[F]ollowing satisfaction of the requirements of this Consent Order, [plaintiff] shall have resolved its liability." This language is distinguishable from that of the *Hobart* ASAOC and is more like the conditional language of the *Bernstein* agreement, which *Hobart* distinguished for failure to "definitively settle[]" the plaintiffs' liability. 758 F.3d at 771. Indeed, the language of the instant AOCs goes beyond that of the *Bernstein* agreement to expressly condition resolution of liability on performance (as opposed to inferring the conditional resolution of liability based on the conditions attached to the EPA's covenant not to sue and broad reservation of rights). Finally, the *Hobart* court observed that the government's covenant not to sue was broader, and reservation of rights narrower, in the *Hobart* ASAOC than the *ITT* AOC. Here, the Sanford and Orlando AOCs expressly condition the EPA's covenant not to sue on "complete and satisfactory performance by [plaintiff] of [its] obligations under this [AOC]," and broadly reserve the EPA's rights until "satisfaction of the requirements of this [AOC]." These "material differences" thus illustrate that the instant AOCs are more like the AOC in *ITT* than the ASAOC in *Hobart*.

## D.

Defendant's arguments to the contrary are unconvincing. It is defendant's position that the AOCs resolved at least some of plaintiff's liability once plaintiff "cut a check" to the EPA for past response costs. We disagree for two simple reasons. First, defendant's argument does not comport with the language of the AOCs, which conditions the resolution of liability on complete—not partial—performance. The reservation of rights provision, for example, states that plaintiff "shall have resolved [its] liability to EPA" "following satisfaction of the *requirements* of this Consent Order," not any single requirement. (Emphasis added.) And the covenants not to sue are "conditioned upon the complete and satisfactory performance [by plaintiff] of [its] obligations under this Order." Second, we are doubtful that the tendering of a check to the EPA distinguishes this case from the aforementioned cases. In every case, the plaintiffs agreed to reimburse the EPA for past costs incurred. In *ITT* and *Hobart*, the parties

agreed that "[plaintiffs] shall pay" to the EPA certain specified costs upon receiving a bill from the EPA. *ITT* AOC, at 15; *Hobart* ASAOC, ¶ 79. In *Bernstein*, the AOC included a specific amount: the plaintiff agreed to pay $112,799.53 within 60 days of the effective date of the AOC. *Bernstein* AOC, at 20. There is no reason to believe that the *Bernstein* plaintiff failed to tender payment by the deadline or that the *ITT* plaintiff failed to pay the EPA when it received a bill. And partial performance seems to have made no difference in *Bernstein*, in which performance of the 2002 AOC was ongoing at the time of litigation. Accordingly, even if defendant's argument did not contravene the language of the AOCs, we would not conclude that payment of some costs transformed the AOC into an administrative settlement.

Finally, defendant argues that the AOCs are bilateral contracts, characterized by an exchange of mutual promises to do something in the future and enforceable at the time of the exchange, as opposed to the time of performance. The dissenting opinion takes this argument further, arguing that one of our prior cases, *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552 (6th Cir. 2007), is binding precedent that "precludes [a] distinction between immediate and conditional effectiveness as a basis for determining whether an agreement has resolved a PRP's liability." The dissent is the first to suggest that *RSR Corp.* is dispositive.

In *RSR Corp.*, the plaintiff entered into a judicially approved consent decree in which it agreed to reimburse the EPA for past and future response costs, finance and perform remedial work at a contaminated site, and undertake additional future response actions. *Id.* at 554. In return, the EPA agreed not to sue or take administrative action against the plaintiff that would impose further liability, and the plaintiff received the right to seek contribution against other PRPs. *Id.* More than three years later, the plaintiff filed a contribution action against the defendant, which moved to dismiss the action as barred by the statute of limitations. *Id.* At issue in that case was whether CERCLA's three-year statute of limitations on contribution actions or six-year limitations period for cost recovery actions governed the judicial consent decree. *Id.* at 555−56. After a detailed discussion of CERCLA's statutory framework, we concluded that plaintiff's action was one for contribution governed by a three-year statute of limitations. *Id.* at 556. Only then did we briefly address RSR's argument raised in its reply brief that it "could not

have resolved its liability to the United States in the consent decree before the completion of the remedial action." *Id.* at 558.  We observed that,

> RSR's promise of future performance was the very consideration it gave in exchange for the United States' covenant not to seek further damages.  RSR and its co-defendants in other words resolved their liability to the United States by agreeing to assume *all* liability (vis-à-vis the United States) for future remedial actions.  And even if the covenant regarding future response costs did not take effect until the remedial action was complete, the statute of limitations for contribution actions runs from the "entry" of the settlement, 42 U.S.C. § 9613(g)(3)(B), not from the date that each provision of that settlement takes effect.

*Id.*  We thus rejected RSR's attempt to evade the three-year statute of limitations.

Notably, *RSR Corp.* did not interpret the various provisions of the consent decree for purposes of determining whether the parties intended to resolve liability by way of the consent decree, as did *ITT*, *Hobart*, and *Bernstein*.  In fact, it is far from clear from our opinion that RSR even contested that the parties intended to resolve its liability by way of the consent decree.  In *RSR Corp.*, we assumed, "[i]n view of the apportionment of liability for past and future response costs among the United States, RSR and its co-defendants [that] the consent decree was a cost-recovery settlement under § 122(h) as well as a cleanup agreement under § 122(d)(1) [and] [b]ecause the consent decree established RSR's liability, its contribution action regarding those 'costs' accrued on the date of the consent decree (April 12, 1999) and expired three years later." *Id.*  Only after we observed that the consent decree had resolved liability—without engaging the various provisions of the consent decree—did we reason that "even if the covenant . . . did not take effect until the remedial action was complete, the statute of limitations for contribution actions runs from the 'entry' of the settlement . . . , not from the date that each provision of that settlement takes effect." *Id.*  To be clear, we do not fault the *RSR Corp.* court for declining to consider whether the parties intended the consent decree to resolve RSR's liability, as it appears that the issue was not squarely before the court.  Where that leaves us is this:  we have at least two Sixth Circuit cases, *ITT* and *Hobart*, and the Seventh Circuit case of *Bernstein*, that are more applicable than *RSR Corp.*  We thus disagree that *RSR Corp.* forecloses our resolution of this case.

Since *RSR Corp.*, both the Seventh Circuit in *Bernstein* and this circuit in *Hobart* have distinguished the consent decree in *RSR Corp.* from the contracts at issue in those cases. In *Bernstein*, the Seventh Circuit concluded that *RSR Corp.* was distinguishable based on "obvious and dispositive differences in the facts":

> In [*RSR Corp.*], the consent order contained an immediately effective release from liability. In this case, it did not. In fact, far from immediately resolving all liability, our AOC immediately resolved none. So, the consideration in [*RSR Corp.*] was an immediate release from liability; the consideration in this case was a conditional promise to release from liability if and when performance was completed. Given the nature of the statutory trigger, that distinction clearly warrants a different result.

*Bernstein*, 733 F.3d at 213 (citation omitted). Likewise, in *Hobart*, our court observed that the ASAOC in that case, like the consent decree in *RSR Corp.*, went into effect on the effective date of the ASAOC, whereas in *Bernstein* the plaintiff "had to meet certain prerequisites before the [AOC] went into effect." 758 F.3d at 771.

The dissenting opinion maintains that the *Bernstein* and *Hobart* courts erred in their interpretation of the consent decree in *RSR Corp.* Specifically, the dissent unearths the underlying 1999 judicial consent decree, not quoted in the *RSR Corp.* decision, to show that the consent decree was not immediately effective. As a preliminary matter, it is not clear that the *Bernstein* or *Hobart* court erred. The covenant not to sue provision in the *RSR Corp.* consent decree provides:

> In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree . . . the United States covenants not to sue or to take administrative action against Settling Defendants . . . . [T]hese covenants not to sue shall take effect upon the receipt by EPA of the payments required . . . . With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remediation Action by EPA.

*RSR Corp.* Consent Decree, at 79.[1] Quoting this provision in part, the *Bernstein* court probably erred in characterizing the covenant not to sue as immediately effective, but did not necessarily err in interpreting the resolution of liability as immediately effective, especially when read in light of our court's interpretation of the consent decree in *RSR Corp.*, 496 F.3d at 558.

---

[1]*United States v. Shane*, 3:89-cv-383 (S.D. Ohio) (record entry 436).

We observed that RSR and its co-defendants had agreed to resolve liability by agreeing to assume all liability for future actions, and, "even if the covenant regarding future response costs did not take effect until the remedial action was complete, the statute of limitations for contribution actions ran from the date of 'entry' of the settlement . . . , not from the date each provision of the settlement takes effect." *Id.* In other words, the *Bernstein* court reasonably distinguished between a case in which parties "immediately resolv[ed] liability" based on promises of future action and "a conditional promise to release from liability if and when performance was completed." *Bernstein*, 733 F.3d at 213. The effect of the former is an immediately effective release of liability (as of the effective date of the agreement) and the effect of the latter is no resolution of liability. The same is true for the *Hobart* court, which relied on the same distinction.

More importantly, even if we assume that the *Bernstein* and *Hobart* courts misread the *RSR Corp.* consent decree, *RSR Corp.* does not preclude a distinction between immediate and conditional effectiveness because our more recent published decision in *Hobart* adopts and ratifies this distinction. Regardless of the actual language of the *RSR Corp.* consent decree, our court's 2014 decision draws a bright line between cases in which the resolution of liability is immediately effective and when the resolution of liability is subject to what the dissent calls a "condition precedent." In *Hobart*, the court distinguished an agreement reading, "The Parties agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA . . . pursuant to which [the plaintiffs] have, as of the Effective Date, resolved their liability to the United States for the Work, and Future Response Costs," 758 F.3d at 769, from the *Bernstein* AOC, which required the PRP "to meet certain prerequisites before the administrative order of consent went into effect," *id.*; *see also Bernstein*, 733 F.3d at 212. It then explained that where liability was settled on the effective date, "liability was definitively settled," which is "factually distinct" from cases in which there were prerequisites to settling liability. The dissent recognizes that there is a difference between cases in which resolution of liability is subject to a "condition precedent," as opposed to a "condition subsequent," but asserts that the distinction "does not represent a rational basis" for resolving liability. Because our recently published decision in *Hobart* says this difference is legally significant, we must disagree with the dissent.

Finally, we acknowledge the dissent's concerns about the "inconsistency" in our circuit's analysis of settlement agreements under CERCLA § 113(f). Some historical background helps to explain the development of our case law. In 2005, the EPA revised its model AOCs. *See* Susan E. Bromm & Bruce S. Gelber, U.S. EPA & U.S. DOJ, *Interim Revisions to CERCLA Removal, RI/FS and RD AOC Models to Clarify Contribution Rights and Protection Under Section 113(f)* (Aug. 3, 2005). Although defendant asks us to consider the EPA's memorandum in interpreting the AOCs in this case, our court has already held that the "EPA memorandum is parol evidence, which can be consulted only in certain limited circumstances [and] [t]his situation does not fall within one of those narrow exceptions." *Hobart*, 758 F.3d at 770−71; *see also Duval Motors Co. v. Rogers*, 73 So. 3d 261, 265 (Fla. Dist. Ct. App. 2011) ("As a general rule, evidence outside the contract language, which is known as parol evidence, may be considered only when the contract language contains a latent ambiguity."). We therefore do not consult the EPA's memorandum for purposes of interpreting the AOCs, but we do acknowledge, for historical background, that the EPA made significant changes to its AOCs in 2005.

Among those revisions, the EPA retitled its model "Administrative Order on Consent," as "Administrative Settlement Agreement and Order on Consent," and referred to the document as a "settlement agreement." EPA Mem., *passim*. It also inserted a provision stating that the parties "agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), pursuant to which [specified PRPs] have, as of the Effective Date, resolved their liability to the United States for the Work, Past Response Costs, and Future Response Costs." *Id.* at 5. In *Hobart*, a case involving a 2006 ASAOC, our court found this modified language significantly probative of an intent to resolve the PRP's liability. 758 F.3d at 768−69. The addition of these modifications thus explains a departure from our prior cases, separating pre-2005 AOCs that do not provide for resolution of liability on the effective date from those post-2005 ASAOCs that do. This is not to say that we will universally conclude that all post-2005 ASAOCs resolve a PRP's liability, or that all pre-2005 AOCs do not, but this historical development serves to explain the "inconsistency" mentioned by the dissent. It also reinforces our conclusion that the pre-2005 AOCs in this case are more like the 2002 *ITT* and *Bernstein* AOCs, and affirms the relevance of provisions detailing the EPA's reservation of rights, covenant not to sue, and the plaintiff's non-admission

of liability.  Ultimately, in light of the guidance available to us in *ITT* and *Bernstein*, we cannot agree with the dissent that the "inconsistency" in our case law justifies the conclusion that the AOCs resolve plaintiff's liability.  Because we rule in favor of plaintiff on its statute of limitations argument, we need not reach its remaining claims of error.

## III.

For these reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

---

**DISSENT**

---

SUHRHEINRICH, Circuit Judge, dissenting.  The question before this court is whether the Sanford and Orlando Administrative Orders by Consent ("Sanford/Orlando AOCs") constitute "administrative settlements" within the meaning of CERCLA—that is, whether they "resolved [plaintiff Progress Energy's] liability to the United States . . . for some or all of a response action or for some or all of the costs of such action . . . ."  42 U.S.C. § 9613(f)(3)(B).  Although the Sanford/Orlando AOCs contain several provisions *ITT Industries, Inc. v. BorgWarner, Inc.*, 506 F.3d 452 (6th Cir. 2007), and *Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757 (6th Cir. 2014), found indicative of an intent not to resolve liability, I disagree with the majority's comparative analysis because it disregards two key similarities between the AOCs here and the agreements in *Hobart* and  *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552 (6th Cir. 2007), agreements this Court found resolved liability.[1]   These similarities dictate a different result.

I further dissent because many of the factors identified in this Circuit's case law to determine whether an agreement resolves liability are arbitrary and immaterial.

**A.    The Import of the AOCs' "Resolved Their Liability" Language and Exchange of Future Promises for Performance**

The majority bases its decision primarily on similarities between the Sanford/Orlando AOCs and the AOCs in *ITT* and *Bernstein v. Bankert*, 733 F.3d 190 (7th Cir. 2012), both of which the respective ruling courts found not to be administrative settlements.  In my opinion, however, two critical features of the Sanford/Orlando AOCs align them more closely with the *Hobart*/*RSR Corp.* agreements by demonstrating the parties' intent to enter into an administrative settlement.  First, the Sanford/Orlando AOCs include the phrase "resolved their liability" from 42 U.S.C. § 9613(f)(3)(B), a deliberate reference to the statute authorizing a contribution action

---

[1]*Hobart* dealt with an administrative settlement, whereas *RSR Corp.* addressed a judicially approved settlement.  Both administrative settlements and judicially approved settlements must "resolve [a potentially responsible party ("PRP")'s] liability to the United States" to entitle the PRP to a contribution action.  42 U.S.C. § 9613(f)(3)(B).

that *Hobart* found significant.   Second, the AOCs express an exchange of promises that *RSR Corp.* ruled resolved liability: Progress Energy agreed to reimburse the EPA's response costs and perform a remedial investigation and feasibility study (RI/FS) in exchange for the EPA's covenant not to sue for the recovery of these costs or the performance of the RI/FS.

**1.       "Resolved Their Liability" Language**

The Orlando/Sanford AOCs provide: "Following satisfaction of the requirements of this Consent Order, Respondents shall have resolved their liability to EPA for the performance of the RI/FS that is the subject of this Order."   "[H]ave resolved their liability" mirrors 42 U.S.C. § 9613(f)(3)(B), which entitles a "person who has resolved its liability to the United States . . . in an administrative or judicially approved settlement" to a contribution action. This inclusion of 42 U.S.C. § 9613(f)(3)(B)'s language distinguishes the Sanford/Orlando AOCs from the *ITT*/*Bernstein* agreements.   As the *Hobart* court noted, the *ITT* AOC's lack of any "explicit statement that ITT Industries had resolved its liability" distinguished it from the *Hobart* Administrative Settlement and Order on Consent ("ASAOC")'s explicit statement that "the Respondents have, as of the Effective Date, resolved their liability." *Hobart*, 758 F.3d at 770; Hobart ASAOC, at 31.   Therefore, under *Hobart,* an AOC's explicit acknowledgement of resolved liability represents at least one indication of an administrative settlement.   Consistent with this reasoning from *Hobart*, the district court viewed the Sanford/Orlando AOCs' explicit resolution of liability as a key indication that both AOCs were administrative settlements.

The AOCs' reference to the § 9613(f)(3)(B) language not only separates them from the *ITT/Bernstein* agreements but also reflects an intent to enter into an administrative settlement with all its attendant statutory consequences.   Although the language resolving liability in the *Hobart* ASAOC differs in verb tense from the language resolving liability in the Sanford/Orlando AOCs, they share a deliberate reference to the statutory language entitling a settling potentially responsible party ("PRP") to a contribution action.   According to *Hobart*, such a deliberate reference to the statute manifests an intent to form an administrative settlement. *See Hobart*, 758 F.3d at 768-69.   Both the *Hobart* court and the majority lend weight to the *Hobart* ASAOC's inclusion of "administrative settlement" in its title as well as its acknowledgement of itself as "an administrative settlement for purposes of Section 113(f)(3)(B)

of CERCLA." *See id.* at 768-69; Hobart ASOAC, at 31; Maj. Op. at 10-12. These aspects of the ASAOC are significant not because they satisfy any technical requirement but rather because they demonstrate the parties' awareness of the governing statute and an intent to align their agreement with the statutory framework. *See Hobart*, 758 F.3d at 768; Maj. Op. at 10-11. The Sanford/Orlando AOCs may not label themselves "administrative settlements," but they come close by mirroring the statutory language that defines an administrative settlement: "Respondents shall have resolved their liability." With this conscious use of the statutory language, the parties deliberately manifested their intent to enter into an administrative settlement.

### 2. *RSR Corp.*'s Binding Precedent Regarding the Exchange of Promises for Future Performance and a Conditional Covenant Not to Sue

The majority acknowledges that the Sanford/Orlando AOCs contain language indicating Progress Energy "shall have resolved their liability," but reasons that the language does not in fact resolve Progress Energy's liability since the resolution is conditioned upon Progress Energy's performance. Maj. Op. at 10. As the opinion further points out, the EPA's covenants not to sue in the Sanford/Orlando AOCs take effect only upon Progress Energy's payment of past and future response costs and upon issuance of the EPA's notice of completion verifying Progress Energy's performance of the work addressed in the consent order. Maj. Op. at 12. The analysis contrasts these conditional provisions with the immediately effective resolution of liability and covenant not to sue in the *Hobart* ASAOC. Maj. Op. at 12. The problem, however, is that the earlier-decided *RSR Corp.* precludes this distinction between immediate and conditional effectiveness as a basis for determining whether an agreement has resolved a PRP's liability. *See Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001) (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)) (holding that a three-judge panel cannot overrule the decision of an earlier panel "'unless a United States Supreme Court decision requires modification or this Court sitting en banc overrules the prior decision'").

In *RSR Corp.*, the plaintiff filed a CERCLA contribution suit more than three years after entering into a judicially approved consent decree with the United States. *RSR Corp.*, 496 F.3d at 554. The consent decree required RSR and the other settling defendants to reimburse the United States for past and future response costs and to perform remedial work on a contaminated site. *Id.* The consent decree included the United States' covenant not to sue or take

administrative action against RSR and the other settling defendants.  *Id.*  Although not quoted in full in *RSR Corp.*, the *RSR* agreement's covenant not to sue states:

> [T]he United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA . . . .  Except with respect to future liability, these covenants not to sue shall take effect upon the receipt by EPA of payments required by Paragraph 49 of Section XVI (Reimbursement of Response Costs).  With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA.

RSR Consent Decree, at 79.[2]  The *RSR* agreement did not contain any provisions explicitly addressing resolution of RSR's liability under 42 U.S.C. § 9613(f)(3)(B).

RSR argued that the consent decree was not a judicially approved settlement because RSR could not have resolved its liability before completing the remedial action that triggered the EPA's covenant not to sue for future liability.  *RSR Corp.*, 496 F.3d at 558.  The court rejected this argument, finding RSR and the EPA exchanged promises of future performance that created an enforceable, bilateral contract:

> RSR insists that it could not have resolved its liability to the United States in the consent decree before the completion of the remedial action.  But RSR's promise of future performance was the very consideration it gave in exchange for the United States' covenant not to seek further damages.  RSR and its co-defendants resolved their liability to the United States by agreeing to assume *all* liability (vis-à-vis the United States) for future remedial actions.  And even if the covenant regarding future response costs did not take effect until the remedial action was complete, the statute of limitations for contribution actions runs from the "entry" of the settlement, 42 U.S.C. § 9613(g)(3)(B), not from the date that each provision of that settlement takes effect.

---

[2]The *RSR Corp.* Consent Decree is available on the Southern District of Ohio's electronic docket.  The case number is 3:89-cv-383, and the consent decree may be found at R.436.  Although not on the record in this case, I would take judicial notice of the *RSR Corp.* Consent Decree as part of the public record of a different case.  *See Scotty's Contracting & Stone, Inc. v. United States*, 326 F.3d 785, 789 & n.1 (2003) (taking judicial notice of a brief filed with a court of record in a different case to interpret the holding of that case).  Although judicial notice is appropriate only when a fact "is not subject to reasonable dispute," Fed. R. Evid. 201(b); *In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 465-66 (6th Cir. 2014), the language of the *RSR Corp.* Consent Decree is not subject to reasonable dispute because it is capable of accurate and ready determination from the public docket of the court of record.  *See Scotty's*, 236 F.3d at 789 n.1.

*Id.* (internal citation omitted).    Ultimately, the court held the consent decree constituted a judicially approved settlement that resolved RSR's liability and triggered the statute of limitations for its contribution action.  *Id.*

The contractual exchange in the *RSR Corp.* consent decree closely resembles the mutual promises in the Sanford/Orlando AOCs, including the EPA's conditional covenant not to sue. Like RSR, Progress Energy made several promises under each AOC: to conduct and implement an RI/FS for each site, to pay the EPA for past response costs incurred at each site, and to reimburse the EPA for future response costs incurred in overseeing the RI/FS's implementation. In return, the EPA promised in both *RSR Corp.* and this case not to sue the settling PRP for recovery of these costs or to compel further work of the sort described in the agreement, but only once the EPA received the promised funds and certified completion of the agreed-upon work. *RSR Corp.*, 496 F.3d at 554; RSR Consent Decree, at 79.  Because the *RSR Corp.* court found that the contingent nature of the EPA's promise did not preclude the resolution of RSR's liability, neither should this panel decide that the conditional nature of the EPA's promise not to sue in the Sanford/Orlando AOCs undercuts their status as administrative settlements.  Under *RSR Corp.*'s logic, Progress Energy's promise to undertake future stages of the clean-up process in exchange for the EPA's conditional covenant not to sue established a binding contract that immediately resolved Progress Energy's liability.

The majority rejects this reading of *RSR Corp.* by implying that the passage addressing the resolution of liability is non-binding, stating, "it is far from clear from our opinion that RSR even contested that the parties intended to resolve liability." Maj. Op. at 14.  The opinion, in fact, directly recognized the issue as disputed: "RSR insists that is could not have resolved its liability to the United States in the consent decree . . . ." *RSR Corp.*, 496 F.3d at 558.[3]  Not only did the court recognize and address this argument, it was necessary to rule on the argument to decide the case.  Had the court accepted RSR's position that the consent decree did not resolve its liability, RSR could have avoided the time-bar on its action by either: 1) taking advantage of the six-year statute of limitations for cost recovery actions in § 9613(g)(2)(B), *id.* at 556-58, or 2) calculating the statute of limitations from the date RSR completed the remedial action and

---

[3]Just because this argument was one of several raised by RSR does not mean the issue "was not squarely before the court" or otherwise inconsequential.  Maj. Op. at 14.

allegedly resolved its liability, rather than the earlier date of the consent decree, *see id.* at 554, 557-58.  Under either route, RSR's action would not have been time-barred.  Yet the court held RSR's action was time-barred because: 1) RSR did resolve its liability, and 2) it did so by "agreeing to" enter into the consent decree—not by completing the actions promised in the consent decree.  *Id.* at 557-58.[4]

Rather than accepting what *RSR Corp.* says on its face, the majority follows a misguided interpretation of *RSR Corp.* articulated by the Seventh Circuit in *Bernstein* and by this Court in the later-decided *Hobart*.  The *Bernstein* court distinguished the *RSR* consent decree from the AOC at issue in that case by mistakenly construing RSR's covenant not to sue as "immediately effective."  *Bernstein*, 733 F.3d at 213.  It appears the *Bernstein* court reached this faulty conclusion by relying on a partial quote from *RSR Corp. RSR Corp.* quoted only part of the consent decree's covenant not to sue, stating, "the United States agreed 'not to sue or take administrative action' that would impose additional liability on RSR."  *RSR Corp.*, 496 F.3d at 554 (quoting RSR Consent Decree, at 79).  The *Bernstein* court quoted this passage as support for its position that the *RSR* consent decree included "an immediately effective promise not to sue" that, in turn, established "an immediately effective release from liability."  *Bernstein*, 733 F.3d at 213.  The *Hobart* court adopted *Bernstein*'s mistaken understanding of the *RSR* agreement's terms and thus of *RSR Corp.*'s logic.  *See Hobart*, 758 F.3d at 771 (stating that "[h]ere, as in *RSR Corp.*, which the Seventh Circuit specifically distinguished, the ASAOC went into effect on the Effective Date").  The majority, despite acknowledging the *RSR* covenant not to sue as conditional, continues to treat the *RSR* consent decree as different from agreements bearing a similar exchange of promises for future performance, one of them a conditional

---

[4]Even if the majority is correct that *RSR Corp.*'s statement on resolution of liability via an exchange of promises is non-binding or otherwise inapplicable, I would still dissent at least in part.  *RSR Corp.* held that "the statute of limitations runs from the 'entry of the settlement,' 42 U.S.C. § 9613(g)(3)(B), not from the date that each provision of the settlement takes effect."  *RSR Corp.*, 496 at 558.  In other words, even if the *RSR Corp.* court accepted the argument that RSR did not resolve its liability until it completed performance, it still would have ruled RSR's contribution action time-barred because the statute of limitations runs from the date of entry regardless of when the PRP resolves liability.  According to this rule, Progress Energy's contribution action for costs arising under the Sanford AOC is time-barred.  Progress Energy completed performance (and, thus, under the majority's interpretation, resolved liability) under the Sanford AOC in 2009, Appellant Br. 4, but according to the statutory language and *RSR Corp.*, the statute of limitations would still relate back to the date of the Sanford AOC in 1998.

covenant not to sue, simply because the later-decided *Bernstein* and *Hobart* did so.  Maj. Op. at 15.[5]

In fact, as shown above, the *RSR* covenant not to sue was not immediately effective, but rather conditioned upon the settling defendants' payment to the EPA and the EPA's certification of completion of the work—just like the covenants not to sue in this case.  Yet the *RSR Corp.* court did not view this conditional covenant not to sue as a barrier to resolving liability under 42 U.S.C. § 9613(f)(3)(B).  To the contrary, the court addressed the argument presented by Progress Energy—that liability cannot be resolved under a conditional covenant not to sue until complete performance—and rejected it on the grounds that such an interpretation is inconsistent with contractual principles and with setting the statute of limitations from the date of entry of a judicially approved settlement (or, as in this case, from the date of an administrative settlement).  *See RSR Corp.*, 496 F.3d at 558.

Despite this clear statement of law, the majority clings to the distinction between immediate and conditional effectiveness as a standard for determining the resolution of liability because "our more recent published decision in *Hobart* adopts and ratifies this distinction."  Maj. Op. at 16.  This conclusion ignores the rule that a three-judge panel in the Sixth Circuit cannot overrule the decision of an earlier panel "unless a United States Supreme Court decision requires modification or this Court sitting en banc overrules the prior decision."  *Darrah*, 255 F.3d at 309 (citation omitted).  Because neither has happened here, this Court is bound by the earlier *RSR Corp.* even though it conflicts with a later panel's reasoning.

The law in our Circuit on whether an agreement "resolves liability" under 42 U.S.C. § 9613(f)(3)(B) is so muddled that it is unsurprising this case engendered disagreement among the panel.  I agree with the majority that *Hobart* draws a distinction between immediate and conditional covenants not to sue, but I am persuaded this Court's earlier decision in *RSR Corp.*

---

[5]The majority expresses doubt that *Bernstein* in fact misinterpreted *RSR Corp.*  In its view, *Bernstein* drew a reasonable distinction between *RSR Corp.*, where the "parties 'immediately resolv[ed] liability' based on promises of future action," and *Bernstein*, where the parties entered into "'a conditional promise to release from liability if and when performance was completed.'"  Maj. Op. at 16.  This analysis rests on the proverbial distinction without a difference.  It stretches logic to treat mutual promises of future performance as dispositive in one case (*RSR Corp.*) but ignore them in another (*Bernstein*) because of a conditional promise of released liability that was actually present in both cases.

bars that line of reasoning. Therefore, because the Sanford/Orlando AOCs explicitly state that Progress Energy "shall have resolved their liability to the EPA" and include a bilateral exchange of promises for future performance, I would affirm the district court's holding that the Sanford/Orlando AOCs resolved Progress Energy's liability and triggered the statute of limitations for its contribution action.

**B.      Our Case Law's Contradictory Stance on Provisions in CERCLA Settlement Agreements**

Although I believe the Sanford/Orlando AOCs are administrative settlements because of their key similarities with the *Hobart* and *RSR Corp.* agreements, the majority applied several factors consistently with this Circuit's case law in determining the Sanford/Orlando AOCs did not resolve Progress Energy's liability. Specifically, the majority analysis points to three similarities between the *ITT/Bernstein* AOCs and the Sanford/Orlando AOCs: 1) a broad reservation of rights by the EPA, 2) non-admission of liability by the settling PRP, and 3) a conditional covenant not to sue by the EPA. Both *ITT* and *Hobart* recognized these terms as signs of an intent not to resolve liability, warranting reliance on them in this case.[6] But I question whether these terms are actually relevant to resolving liability under 42 U.S.C. § 9613(f)(3)(B). Moreover, the presence of these same terms in the *Hobart* ASAOC and the *RSR Corp.* consent decree reveals a contradiction in this Circuit's comparative approach and suggests these terms may be immaterial for purposes of defining an administrative settlement.

**1.      Reservation of Rights**

Analogizing the Sanford/Orlando AOCs to the *ITT*/*Bernstein* AOCs based on the EPA's broad reservation of rights falls squarely within this Court's analytical approach. The *ITT* court highlighted the *ITT* AOC's broad reservation of rights in holding that the AOC did not resolve liability. *ITT*, 506 F.3d at 459. The *Hobart* court, too, described the EPA's reservation of rights in the *Hobart* ASAOC as "much narrower" than in the *ITT* AOC's to support a distinction between the two agreements. *Hobart*, 758 F.3d at 770.

---

[6]I maintain that both *Hobart*'s and the majority's treatment of the conditional covenant not to sue as a sign of unresolved liability contravenes the earlier-decided, binding *RSR Corp.* But even assuming the majority's view of the conditional covenant not to sue did not misinterpret *RSR Corp.*, I believe that this Circuit's distinction between *Hobart*'s immediately effective covenant not to sue versus conditional covenants not to sue is not aligned with the statutory language and has not been consistently applied.

It is unclear, however, why a broad reservation of rights by the EPA impacts resolution of a PRP's liability. The reservation of rights in the Sanford/Orlando, *ITT*, and *Bernstein* agreements clarifies the EPA's ability to take legal action in matters not covered by the agreement and to ensure the PRP's satisfactory implementation of the clean-up addressed in the agreement. The reservation of rights does not allow the EPA to take legal action to compel Progress Energy or other PRPs to undertake actions they already performed pursuant to the settlement agreement. Because the performance contemplated by the Sanford/Orlando AOCs does not encompass all possible steps of clean-up under CERCLA, the AOCs leave the EPA with authority to order parts of clean-up not addressed by agreement. But this reserved authority should not affect the agreement's status as an administrative settlement because 42 U.S.C. § 9613(f)(3)(B) requires only a resolution of liability for "some" of a response action. Therefore, this factor should not lead us to hold the AOCs in this case are not administrative settlements.

Moreover, relying on a reservation of rights to find unresolved liability is in tension with the outcome in *Hobart.* Although not addressed in *Hobart*'s published opinion and thus not binding on this Court, it is noteworthy that the *Hobart* ASAOC[7] contained a reservation of rights parallel to that in the *ITT*, *Bernstein*, and Sanford/Orlando AOCs. The *Hobart* ASAOC states, almost identically to the *ITT* AOC, *see* Maj. Op. at 9, that "nothing herein shall prevent U.S. EPA . . . from taking other legal or equitable action as it deems appropriate or necessary." Hobart ASAOC, at 28. Given this provision, it is puzzling why the *Hobart* court described the ASAOC's reservation of rights as "much narrower" than the *ITT* AOC's. *Hobart*, 758 F.3d at 770. Perhaps the parties did not bring the ASAOC's broad reservation of rights to the court's attention, or perhaps the court found the provision unimportant in light of the ASAOC's other terms indicating a resolution of liability, including those the EPA added to its model AOCs in 2005 (although if the latter scenario was the case, as the majority suggests, the *Hobart* court did not say so). Regardless of the reason, *Hobart*'s disregard of the ASAOC's broad reservation of rights exposes an inconsistency in our case law's analysis of settlement agreements under 42 U.S.C. § 9613(f)(3)(B). The presence of a reservation of rights provision in the *Hobart* ASAOC

---

[7]As with the *RSR Corp.* Consent Decree, I would take judicial notice of the *Hobart* ASAOC as part of the public record in a different case that is not reasonably subject to dispute. *See Scotty's*, 326 F.3d at 789 & n.1.

should at least give this Court pause about the wisdom of continuing to treat such a provision as indicative of unresolved liability.

**2.　　Non-Admission of Liability**

Both *ITT* and *Bernstein* emphasized a non-admission of liability by the PRP as a reason the respective AOCs did not resolve liability. *Bernstein*, 733 F.3d at 212; *ITT*, 506 F.3d at 460. Reliance on the Orlando[8] AOC's similar non-admission of liability to conclude the AOC is not an administrative settlement thus rests on firm precedential ground.

It is questionable, however, that a refusal to admit liability denotes unresolved liability. Admitting liability is not the same as resolving liability. *Compare Admission*, Black's Law Dictionary (10th ed. 2014), *available at* WestlawNext ("a statement in which someone admits that something is true or that he or she has done something wrong"), *with Resolve*, Black's Law Dictionary (10th ed. 2014), *available at* WestlawNext ("to find an acceptable or even satisfactory way of dealing with (a problem or difficulty)"). A person can agree to undertake actions to resolve a claim against it without admitting to the factual or legal truth purportedly underlying that claim. Settlement agreements in other contexts frequently include such non-admission clauses. *See* 2 Defense of Equal Employment Claims § 14:8 (2015), *available at* WestlawNext (observing the "common" use of non-admission clauses by employers settling employment discrimination claims). CERCLA itself implicitly recognizes this distinction between admission and resolution of liability in the section governing settlement agreements by providing, "the participation by any party in the process under this section shall not be considered an admission of liability for any purpose." 42 U.S.C. § 9622(d)(1)(B). Although case law in our Circuit provides a firm basis for treating a non-admission of liability as a sign of unresolved liability, there is no logical connection between admitting and resolving liability. Therefore, a non-admission of liability should not be relied upon to find the Orlando AOC is not an administrative settlement.

Moreover, using a non-admission of liability to hold the Orlando AOC is not an administrative settlement cuts against the results in *RSR Corp.* and *Hobart*. Although not

---

[8]The majority excludes the Sanford AOC from this comparison because the Sanford AOC is silent as to admission of liability by Progress Energy.

discussed in either published opinion, the agreements in both those cases contained a non-admission of liability, Hobart ASAOC, at 1; RSR Consent Decree, at 3, yet both agreements resolved liability. Whatever the reason for the court's silence (possibly because the parties failed to bring the term to the court's attention or because the court considered it immaterial), the omission demonstrates an uneven application of this factor to settlement agreements brought before this Court. This inconsistency should lead the Court to reexamine the use of this factor in determining whether agreements are administrative settlements.

**3.      Conditional Covenant Not to Sue**

Reliance on the Sanford/Orlando AOCs' conditional covenant not to sue to show unresolved liability accurately follows *Hobart,* which distinguished the ASAOC at issue in that case with the *ITT* AOC by noting "the covenant not to sue took effect immediately in this case," whereas the *ITT* AOC "requir[ed] payment first." *Hobart*, 758 F.3d at 770. As explained earlier, this Circuit's distinction between *Hobart*'s immediately effective covenant not to sue and a conditional covenant not to sue like in the Sanford/Orlando AOCs misinterprets *RSR Corp.* But even if it did not, the distinction is problematic because the *Hobart* ASAOC places its own condition on its covenant not to sue. The *Hobart* ASAOC provides, "This covenant not to sue shall take effect upon the Effective Date *and is conditioned upon the complete and satisfactory performance by Respondents of all obligations under this Settlement Agreement.*" Hobart ASAOC, at 28 (emphasis added). The published opinion in *Hobart* does not acknowledge this conditional language, and therefore this Court cannot infer any binding rule of law from *Hobart*'s silence on this matter. But the omission reveals a lack of substantive analysis of conditional covenants not to sue and whether they differ from an immediately effective yet still conditional covenant not to sue for purposes of resolving liability under 42 U.S.C. § 9613(f)(3)(B). This discussion hardly matters because of the ruling in *RSR Corp.* that even fully conditional covenants not to sue may resolve liability. But because a differing interpretation of *RSR Corp.* and the conditional covenant not to sue prevailed in this case, it is worth considering whether an immediately effective but still conditional covenant not to sue is substantively different from a fully conditional one.

A condition is a contractual concept that "triggers or negates a duty to render a promised performance." *Condition*, Black's Law Dictionary (10th ed. 2014), *available at* WestlawNext. A condition is precedent where an obligation does not take effect until the condition occurs. *Condition*, Black's Law Dictionary (10th ed. 2014), *available at* WestlawNext. In the CERCLA settlement context, where a PRP's obligations are a condition precedent to the EPA's covenant not to sue, the EPA has "the right to sue up until the point when the PRP completed its obligations." *NCR Corp. v. George A. Whiting Paper*, 768 F.3d 682, 691 (7th Cir. 2014). In contrast, a condition is subsequent where an obligation takes effect immediately but is discharged upon the happening of the condition. *Condition*, Black's Law Dictionary (10th ed. 2014), *available at* WestlawNext. In terms of an EPA covenant not to sue subject to a condition subsequent, "the defendants are presently vested with the protections of the statute, subject to later divestment if they fail to carry out their part of the agreement with the EPA." *Dravo Corp. v. Zuber*, 13 F.3d 1222, 1226 (8th Cir. 1994). The covenant not to sue in the Sanford/Orlando AOCs appears subject to a condition precedent, whereas the covenant not to sue in the Hobart ASAOC appears subject to a condition subsequent. The main difference between these two covenants not to sue is the EPA's theoretical ability under the Sanford/Orlando AOCs to sue while the Progress Energy's contractual performance is ongoing.[9]

That being said, it is doubtful whether the two types of conditions actually differ in terms of "resolving liability" under 42 U.S.C. § 9613(f)(3)(B). The permanent effectiveness of both covenants not to sue depends upon the PRP's complete and satisfactory performance. Therefore, both covenants not to sue remain uncertain because of the contingency of complete performance.[10] The PRP under the condition subsequent is susceptible to renewed legal action

---

[9]Even this difference, however, wanes in importance under the limitation of the contractual duty of good faith and fair dealing, which a party violates by interfering with or failing to cooperate in the other party's performance. Restatement (Second) of Contracts § 205. As long as a PRP is making reasonable and good faith steps towards complete performance, the EPA bringing suit in the middle of performance would likely be a deliberate interference with the PRP's ability to fulfill the condition precedent (i.e. its complete performance). In such a scenario, the EPA could not rely on the failed condition precedent to avoid its contractual obligation not to sue. *See* 7A Am. Jur. 2d Contracts § 687.

[10]Even if the EPA's covenant not to sue contained no condition at all, the EPA could still sue a PRP for breach of contract if the PRP failed to perform its obligations under the settlement agreement. The damages in such an action would theoretically not be significantly different from an action brought directly under CERCLA. Thus, even a unconditional covenant not to sue arguably resolves liability to the same extent as a fully conditional

in the event of incomplete or dissatisfactory performance just as the PRP under the condition precedent is susceptible. Our case law's implicit distinction between the two is therefore confusing for parties entering into a settlement agreement under CERCLA. In addition, it appears to overlook the statutory purpose of a three-year statute of limitations for contribution actions arising out of settlement agreements: "to ensure that the responsible parties get to the bargaining—and clean-up—table sooner rather than later." *RSR Corp.*, 496 F.3d at 559. Delaying the start of the limitations period for settlement agreements with a condition precedent, but not for agreements with a condition subsequent, is incongruous with the statutory purpose to expedite clean-up and litigation. To the extent our case law draws a line for purposes of classifying administrative settlements between immediately effective, conditional covenants not to sue versus fully conditional covenants not to sue, this distinction does not represent a rational basis for deciding which settlement agreements give rise to a contribution action under 42 U.S.C. § 9613(f)(3)(B). Therefore, such a factor should not be used determine whether the Sanford/Orlando AOCs resolved Progress Energy's liability.

**Conclusion**

I would affirm the decision of the district court because the Sanford/Orlando AOCs resemble the agreements in *RSR Corp.* and *Hobart* in demonstrating the parties' intent to enter into an administrative settlement, thereby triggering the three-year statute of limitations for Progress Energy's contribution action.

---

covenant not to sue, since both terms still allow the EPA to sue (for different causes of action) in the event of non-performance.